IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNRISE OPPORTUNITIES, INC, et al., ) | |
| ) | Case No. 05 C 2825 |
| Plaintiffs, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| JERRY REGIER, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION AND ORDER

This case involves the rates at which Defendants – agencies and officers responsible for administering the State of Florida's Medicaid program – compensate Plaintiff health care providers for medical services to Medicaid recipients. The underlying merits of the case are being litigated in the United States District Court for the Southern District of Florida. The sole issue before this Court is whether third-party subpoenas issued to Defendants' experts Navigant Consulting, Inc. ("Navigant") and its two employees, Catherine Sreckovich and Jeff Moor (collectively, "third-party experts"), should be quashed.

Defendants and the third-party experts now move this Court pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) to reconsider or amend its prior ruling denying the third-party experts' motion to quash or for a protective order. This Court ruled previously that the law of the case doctrine advised against relitigating an earlier Florida district court decision denying a motion to quash the subpoenas. Upon reconsideration, however, because the Florida district court entered its judgment without jurisdiction over the third-party experts, this Court holds that it was a manifest error of law to rely on the law of the case doctrine to deny the motion to quash.

Considering anew the question of whether to quash the subpoenas, this Court holds that under Rule 26(b)(4), Plaintiffs may not depose Defendants' consulting expert, even though he was identified previously as a testifying expert. Defendants' testifying expert shall be deposed consistent with any ongoing discovery plan and stay entered in the underlying Florida litigation. In connection with her deposition, she and Navigant are ordered to produce all relevant documents including patient identifiable medical information subject to a HIPAA qualified protective order. Accordingly, the motion for reconsideration or amendment is granted and the third-party experts' motion to quash the subpoenas and for protective order is granted in part and denied in part.

**Factual and Procedural Background**

On April 12, 2005, Plaintiffs served third-party subpoenas on Navigant and its two employees, Catherine Sreckovich and Jeff Moor. Defendants had hired Navigant as experts on Medicaid expenditures and claims processing. Defendants concede that they intend Ms. Sreckovich to testify at trial, but state that Mr. Moor was retained solely as a consulting expert to assist them in their analysis and preparation for litigation At the time the subpoenas were issued, Defendants had listed Mr. Moor as a testifying expert. After receipt of the subpoena, Defendants corrected their alleged mistake and removed Mr. Moor from their witness list.

On April 22, 2005, in a motion filed before Magistrate Judge Bandstra in the Southern District of Florida, Defendants moved to quash the subpoenas issued to their third-party experts. The third-party experts contend that they were not a party to that motion. On May 5, 2005, Magistrate Judge Bandstra denied the motion to quash, finding that "these witness [sic] may have substantial knowledge regarding the facts and/or defenses alleged in the lawsuit." Soon after the magistrate judge's order compelling their depositions, on May 10, 2005, Navigant Consulting, Inc., Jeff Moor

2

and Catherine Sreckovich filed their own motion to quash and for a protective order here in the District Court for the Northern District of Illinois.

Meanwhile, in the Southern District of Florida, under Federal Rule of Civil Procedure 72(a), Defendants timely filed their objections to the magistrate judge's ruling.[1] On June 28, 2005, District Judge Martinez found that his Court had no jurisdiction over the out-of-district expert deponents and that Rule 45 required Plaintiffs to move in the District Court for the Northern District of Illinois to compel the depositions. At the time of this decision, briefing on the third-party experts' motion to quash was ongoing in this Court. Defendants also filed memoranda supporting the motion to quash. The third-party experts and Defendants both noted the later Florida district court decision in their reply briefs to this Court filed July 8, 2005. On July 20, 2005, this Court issued a minute order denying the motion to quash. In that order, the Court "decline[d] the invitation to review the decision of Judge Bandstra in the Southern District of Florida," holding that principles embodied in the law of case doctrine counseled against allowing the third-party experts to relitigate the magistrate judge's decision denying the motion to quash. The July 20 order did not mention the subsequent Florida district court decision setting aside the magistrate judge's ruling on jurisdictional grounds.

Within ten days of the entry of this Court's order denying their motion to quash, on August 1, 2005, both the third party experts and Defendants timely filed motions to reconsider or amend the judgment under Rules 52(b) and 59(e). Their motions ask this Court to reconsider its earlier decision on the grounds that the law of the case doctrine cannot apply when the original court had

---

[1] Upon timely objection, Rule 72(a) requires the district judge to modify or set aside any part of a magistrate judge's order that is clearly erroneous or contrary to law.

no jurisdiction to enter its judgment and where the third-party experts were not parties to that action. They request further that upon reaching the merits of their motion to quash, this Court find that Mr. Moor, as a consulting expert, cannot be compelled to testify in a deposition and that a protective order be entered to prevent the disclosure of patient medical information.

## ANALYSIS

### I. Motions to Reconsider or, Alternatively, to Amend

Defendants and the third-party experts have filed their motions to reconsider or amend this Court's prior order under Rules 52(b) and 59(e). Before proceeding, this Court first must satisfy itself that these are the proper rules under which to reconsider its prior ruling. *Pivot Point International, Inc. v. Charlene Products, Inc.*, 816 F. Supp. 1286, 1287 (N.D. Ill. 1993).

While, there is no motion for reconsideration *per se* in the Federal Rules of Civil Procedure, if a judgment has been entered in a case, a party can seek relief under Rules 52(b) and 59(e). *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). The relevant question thus becomes whether an order denying a third party's motion to quash, filed in a court ancillary to the underlying litigation, constitutes a judgment. Assuming a judgment exists to reconsider, the Court must then decide, under the motion to reconsider standard, whether it was a manifest error of law or fact to rely on the law of the case doctrine to deny the third-party experts' motion to quash.

#### A. Applicability of Rules 52(b) and 59(e)

Federal Rule of Civil Procedure 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment," while Rule 52(b) states that "[o]n a party's motion filed no later than 10 days after entry of judgment, the court may amend

4

its findings – or make additional findings – and may amend the judgment accordingly." Both of these rules, by their express language, apply only to judgments.

A judgment is defined for purposes of the Federal Rules of Civil Procedure in Rule 54(a): "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Conversely, 28 U.S.C. § 1291 declares that an appeal lies from "all final decisions of the district courts of the United States." Therefore, a judgment is a final decision of the district court.

The "final decision" rule reflects "a strong congressional policy against piecemeal reviews and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon*, 418 U.S. 683, 690, 94 S. Ct. 3090 (1974). Some orders, however, which do not terminate the underlying litigation, are appealable through the collateral order exception because they are final in effect. Such collateral orders "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458 (1978); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221 (1949).

The decision to grant or deny a motion to quash a subpoena, like other discovery orders, is interlocutory and generally not appealable as a final judgment or collateral order. *Simmons v. City of Racine*, 37 F.3d 325, 327 (7th Cir. 1994). Two material facts, however, make the order entered in this case legally distinct: first, the subpoena was issued to a third party and second, the subpoena issued from a court ancillary to the main litigation. Each fact standing alone justifies a finding that the discovery order is final under the collateral order doctrine.

A discovery order that resolves fully a dispute involving a third-party, or "stranger," to the litigation is usually final under the collateral order doctrine. In *Ivey v. Harney*, 47 F.3d 181, 182 (7th Cir. 1995), a prisoner filed suit under § 1983 against the sheriff, chief jailer, and chief medical officer of LaSalle County after he slipped in the shower and hurt his back. In connection with the litigation, the district court issued a writ requiring the Illinois Department of Corrections to transport Ivey to a physician more than 200 miles away. *Id.* The Department of Corrections appealed the district court's writ while the litigation between the parties continued. *Id.* at 183. Despite the ongoing nature of the litigation, the Court found appellate jurisdiction satisfied because the IDOC was "a stranger" to the underlying case and thus the writ order was a "final" decision collateral to the other proceedings. *Id.* at 183. Similarly, the third-party experts here, as nonparties in the litigation, had the right to immediate appeal of a discovery order entered against them.[2] *See also Dellwood Farms, Inc. v. Cargill Farms, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997) ("When the order is directed against a nonparty, as it is here, he has no appellate remedy at the end of the litigation, so he is allowed to appeal immediately"); *Perlman v. United States*, 247 U.S. 7, 12-13, 38 S. Ct. 417, 419-20 (1918) (allowing appeal of order directing a third party to produce exhibits where it would otherwise be "powerless to avert the mischief of the order").

The effective finality of the Court's order is more certain because the motion to quash is the only matter pending in this Court; a court ancillary to the main litigation. When an order involves "information in the possession of a witness who is a stranger to the pending action in another jurisdiction for which the evidence is sought," allowing appeal would not "impinge upon the general

---

[2] Admittedly, the Court has trouble classifying the third-party experts as "strangers" to the litigation. But they are nonparties and, as such, the case law speaks broadly of their right to interlocutory appeal.

principle against fragmentary appeals," *Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868, 870, 871-72 (7th Cir. 1966), and an appeal would lie. *See also Hernly v. USA*, 832 F.2d 980, 981 n.1 (7th Cir. 1987) (noting that court had jurisdiction over appeal "because it was entered in a different district court from where the main action is pending").[3]

This Court's prior order denying the third-party experts' motion to quash thus satisfies the collateral order doctrine because it was directed against a nonparty, resolved all of the issues pending before this Court and was entered in a different district from where the main action is pending.[4] Thus, retracing our path – because this Court's prior order satisfies the collateral order doctrine it equals a final decision of the district court, a final decision of the district court means that an appeal lies under 28 U.S.C. § 1291, because an appeal lies a judgment exists under Rule 54(a) and such a judgment may be reconsidered or altered under Rules 52(b) and 59(e).[5]

---

[3] *See Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1021 (Fed. Cir. 1986) (holding that an appeal lies when the order being appealed is the final disposition of the only proceeding in the ancillary court); *compare CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983) ("[W]here, as here, the district court granting the motion to quash is in a different district from the court hearing the merits, the order is reviewable before final judgment") with *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 335 (4th Cir. 2001) ("Most courts have held that a discovery order is not 'final' when it is entered by a district court within the same circuit as the court in which the underlying litigation is pending.").

[4] Likewise, this Court's current decision granting in part and denying in part the motion to quash is "final" and appealable under the collateral order doctrine.

[5] Whether the Court were to reconsider its order under Rule 59(e), Rule 54(b), or its own inherent common law authority to reconsider its decisions, the standard applied is generally the same. *See Neal v. Honeywell*, 1996 WL 627616, *2-3 (N.D. Ill. 1996) (noting the overlapping nature of the standards applied to motions to reconsider). And under any of these similar standards, the Court would find error sufficient to require the amendment of its prior ruling.

**B. Standard for Federal Rules of Civil Procedure 52(b) and 59(e)**

Rules 52(b) and 59(e) grant this Court the power to reconsider its prior rulings and "to rectify its own mistakes in the period immediately following the entry of judgment," thereby avoiding unnecessary appeals. *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 450, 102 S. Ct. 1162, 1166 (1982). A motion made under these rules, however, must rely on newly discovered material evidence or a manifest error of law or fact. *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). In arguing that the court committed a manifest error of law or fact, a party may not introduce new evidence or arguments that could have been presented to the court prior to the judgment. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

Defendants' and the third-party experts' motions do not point to any newly discovered evidence, instead they challenge several findings that they consider manifest errors of law and fact. Specifically, they challenge this Court's conclusion that the law of case doctrine advised against relitigating the magistrate judge's decision denying the motion to quash and granting the motion to compel the depositions of Ms. Sreckovich and Mr. Moor. Upon reconsideration, this Court agrees that it was a mistake to afford deference to the decision of the Magistrate Judge in the Southern District of Florida under the law of the case doctrine because he entered his order without jurisdiction.[6]

---

[6] Accordingly, the Court does not consider the third party experts' alternative argument that the law of the case doctrine cannot apply because they were not parties to the Florida decision.

8

### C. The Law of the Case Doctrine

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 911-12 (7th Cir. 2005); *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382 (1983). The doctrine promotes finality and uniformity of decision by not allowing the constant relitigation of issues already argued and decided. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 830 (1988). Given this foundation, "the doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Jarrard*, 408 F.3d at 912, quoting *Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir. 1989). The question before this Court now is whether the doctrine's rationale extends so far as to afford deference to a decision entered by a coordinate court that lacked jurisdiction over the parties.

Several established legal principles lead this Court to conclude that the doctrine should not be applied so broadly. First, the judgment of a court lacking jurisdiction over the subject matter of the litigation or the parties is void. *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 608-609, 110 S. Ct. 2105 (1990). Second, the judgment of a court lacking such adequate jurisdiction is not entitled recognition under the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, and will not be given res judicata or collateral estoppel effect in later proceedings. *Baker v. General Motors Corp.*, 522 U.S. 222, 233, 118 S. Ct. 657, 663-64 (1998).

A judgment entered by a court without jurisdiction over the subject matter or parties is void:

> The proposition that the judgment of a court lacking jurisdiction is void traces back to the English Year Books, see *Bowser v. Collins,* Y.B.Mich. 22 Edw. IV, f. 30, pl. 11, 145 Eng.Rep. 97 (Ex. Ch. 1482), and was made settled law by Lord Coke in *Case of the Marshalsea,*

9

> 10 Coke Rep. 68b, 77a, 77 Eng.Rep. 1027, 1041 (K.B. 1612). Traditionally that proposition was embodied in the phrase *coram non judice,* "before a person not a judge"--meaning, in effect, that the proceeding in question was not a *judicial* proceeding because lawful judicial authority was not present, and could therefore not yield a *judgment*.

*Burnham*, 495 U.S. at 608-609; *see also Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576 (7th Cir. 2005). The Florida district court correctly found that it lacked jurisdiction over the third-party experts, thus its order compelling their depositions is void. *Patzer v. Board of Regents of the University of Wisconsin*, 763 F.2d 851, 858 (7th Cir. 1985) (holding that district court order entered without jurisdiction was void ab initio). In the absence of a valid judgment from the Florida district court, it follows that there was no decision to rely upon as the law of the case.

The law of the case doctrine's goals of finality and uniformity of decision are shared by the Full Faith and Credit Clause as well as the traditional doctrines of res judicata and collateral estoppel. Thus, precedent refusing to afford full faith and credit, res judicata or collateral estoppel effect to a judgment entered without adequate jurisdiction over the subject matter or parties buttress the conclusion that the law of the case doctrine cannot apply to the judgment of the Florida court here.

The Full Faith and Credit Clause promotes a mutual understanding among the 50 united states to recognize, honor and enforce each other state's official acts. U.S. Const. art. IV, § 1. The Clause is intended primarily to provide for the continuity between states and enforcement across state lines of non-federal laws, civil claims and court rulings. *Sutton v. Leib*, 342 U.S. 402, 72 S. Ct. 398 (1952); *Atherton v. Atheron*, 181 U.S. 155, 21 S. Ct. 544 (1901). The legal doctrines of res judicata and collateral estoppel share these goals of certainty, efficiency and uniformity. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649 (1979) ("Collateral estoppel, like

the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."). These laudable aims, however, do not trump the steadfast rule that a court must have "adjudicatory authority over the subject matters and parties governed by the judgment" if its decision is to be given weight in a later proceeding. *Baker*, 522 U.S. at 233. Thus, the Florida district court's judgment, entered without jurisdiction over the third-party experts, would not be given res judicata or collateral estoppel effect, nor would it be entitled to full faith and credit. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805-806, 105 S. Ct. 2965 (1985) (holding that a judgment cannot be given full faith and credit when the adjudicating court lacked personal jurisdiction); *Ellerd v. Southern Pacific Railroad Co.*, 241 F.2d 541, 545 (7th Cir. 1957) ("All the authorities agree that in order that the doctrine of res judicata apply, the court whose judgment is asserted as an adjudication, must have been one of competent jurisdiction"); *Johnston v. Arbitrium (Cayman Islands) Handels*, 198 F.3d 342, 350 (2d Cir. 1999) ("[I]n order for collateral estoppel to apply, the court rendering the initial determination must have had adequate jurisdiction"). Logic dictates that the law of the case doctrine likewise cannot apply when a court enters judgment without jurisdiction over the subject matter of the litigation or the parties involved.[7]

This Court holds that the law of the case doctrine does not apply to the Florida judgment entered without adjudicatory authority over the parties. Consequently, this Court must take a fresh look at the merits of the third-party experts' motion to quash.

---

[7] Excepted from this reasoning are decisions such as a motion to transfer where the originating court decided that it lacked jurisdiction. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818-19 (1988) (describing the "perpetual game of ping-ping" that may result if each court found it lacked jurisdiction and transferred it back to the other).

11

## II. The Motion to Quash and For Protective Order

Plaintiffs caused to be issued third-party subpoenas to Defendants' expert Navigant Consulting, Inc. and its two employees, Catherine Sreckovich and Jeff Moor. The motion to quash presented to the Court is on behalf of all three parties. As to Ms. Sreckovich, Defendants' testifying expert, the parties merely quibble about her availability. The majority of the parties' arguments are focused on Defendants' other expert, Mr. Moor. Defendants initially listed Mr. Moor as a testifying expert, but later removed his name from their list of witnesses for trial. Finally, Navigant seeks a protective order governing its disclosure of documents containing patient medical information.

### A. Jeff Moor

Defendants originally listed Jeff Moor as a testifying expert. After he had been served with a subpoena for deposition, Defendants removed his name from their witness list. Defendants have represented to this Court that his name wrongly was placed on the list of testifying witnesses. Defendants further represent that he was hired only as a consulting witness in order to assist them in their preparation for trial.

Do the rules require a party expert to be deposed if he originally is identified as a testifying expert, but later the party decides that the expert will not testify? In answering this question we look first at the language regarding discovery of experts in the Federal Rules of Civil Procedure. Rule 26(b)(4) deals with the deposition of testifying and consulting experts:

> (A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.
>
> (B) A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or

12

> preparation for trial and who is not expected to be called as a witness at trial only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Unfortunately, the language of Rule 26(b)(4)(A) does not answer clearly our question. The advisory committee notes, on the other hand, provide significantly more help in our query:

> Section (b)(4)(A) deals with discovery of information obtained by or through experts who will be called as witnesses at trial. . . .
>
> Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand . . . Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side."

F.R.C.P. 26(b)(4) advisory committee notes (1970). To begin, it is hard to ignore the straightforward statement that subdivision (b)(4)(A) applies to experts who will be called as witnesses at trial. Continuing, the remainder of the notes focus on the reasons that a testifying expert needs to be deposed prior to trial. Because no similar reason exists to depose non-testifying experts, this Court agrees with the majority of courts that Rule 26(b)(4)(A) allows only for the deposition of experts that a party intends to call at trial.[8] *See Emplrs. Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422 (D. Kan. 2003) (collecting cases); *Ross v. Burlington Northern Railroad*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991) ("Although plaintiff may have originally designated the witness as a testifying expert, plaintiff has the prerogative of changing his mind."). This holding also respects Rule 26(b)(4)(B)'s purpose "to promote fairness by precluding

---

[8] This Court assumes that the Florida district court would never allow Mr. Moor to testify at trial given the representations made in this Court.

unreasonable access to an opposing party's diligent trial preparation." *Shu-Tao Lin v. McDonnell Douglas Corp.*, 732 F.2d 45, 48 n.3 (2d Cir. 1984).

Rule 26(b)(4)(B) permits an opposing party to "discover facts known or opinions held" by a consulting expert "upon a showing of exceptional circumstances." Exceptional circumstances are those "under which it is impracticable for the party seeking discovery to obtain facts and opinions on the same subject by other means." F.R.C.P. 26(b)(4)(B). Plaintiffs do not argue that exceptional circumstances exist that would justify the deposition of Mr. Moor. Plaintiffs instead frame their argument as one entitling them to depose Mr. Moor as a fact witness. It is true that Rule 26(b)(4) does not apply if the expert "was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit." F.R.C.P. 26(b)(4) advisory committee notes (1970). Plaintiff, however, do not seek facts known to Mr. Moor independent of his role as an expert in this litigation. The only facts that Plaintiff seek are answers to questions that "were within the knowledge of Mr. Moor based on his assistance and/or collaboration with Ms. Sreckovich." Such knowledge is exactly the type of "facts held and opinions known" that are protected from discovery by Rule 26(b)(4)(B), and therefore are not discoverable facts or constitute exceptional circumstances.

Accordingly, this Court holds that because Jeff Moor will not testify at trial, he cannot be deposed under Rule 26(b)(4)(A). Additionally, he cannot be compelled to testify under Rule 26(b)(4)(B) or as a fact witness.

### B. Catherine Sreckovich and Navigant Consulting, Inc.

Rule 26(b)(4)(A) requires Catherine Sreckovich, as a testifying expert, to be deposed. The parties do not argue otherwise. Instead, both sides present varying accounts and accusations

regarding why her deposition has yet to occur. The dispute essentially revolves around whether Ms. Sreckovich should be deposed before or after she issues any supplemental expert reports. Unfortunately, the procedural posture of this case prevents this Court from understanding completely the progress of discovery in the underlying litigation. The parties though have represented to the Court that discovery currently is stayed. Hopefully any supplemental expert reports from Ms. Sreckovich will be complete when the stay is lifted and her deposition may proceed as soon as practicable.

In connection with the deposition and expert testimony of Ms. Sreckovich, Plaintiffs request she and Navigant produce Medicaid claims documents that contain patient identifiable medical information. The third-party experts move this Court to enter an order pursuant to the Health Insurance Portablility and Accountability Act ("HIPAA") protecting them from having to produce documents without the identifiable patient information redacted.

HIPAA permits protected patient medical information to be produced upon entry of a protective order by this Court. 45 C.F.R. § 164.512(e)(1). The substance of this litigation involves the rates at which the agencies and officers responsible for administering the State of Florida's Medicaid program compensate Plaintiff health care providers for medical services to Medicaid recipients. Defendants and the third-party experts have not argued that the patient information is not relevant to the subject matter of the litigation under Rule 26(b)(1). Rather, Defendants and the third-party experts argue that the patient identifying information is protected from disclosure under HIPAA and federal Medicaid regulations. First, HIPAA does not create a privilege for patient medical information, it merely provides a procedure for the disclosure of such information in judicial and administrative proceedings. *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 925-26

(7th Cir. 2004). In this regard, state law privileges cannot be used to prevent the production of relevant documents or information in a case such as this one grounded in a federal question. *Id.* at 925. Second, federal Medicaid regulations specifically allow disclosure of information for purposes directly related to State plan administration; purposes including "[c]onducting or assisting an investigation, prosecution, or civil or criminal proceeding related to the administration of the plan." 42 C.F.R. § 431.302(d). A civil proceeding challenging the rates at which plan administrators compensate plan providers falls within this provision. Given the relevance of the patient information to the subject matter of the litigation and the lack of any governing privilege, Navigant and Catherine Sreckovich are ordered to produce all relevant documents in unredacted form and subject to an agreed HIPAA protective order submitted by the parties and entered by this Court.[9]

**CONCLUSION AND ORDER**

---

[9] The language of HIPAA provides clear guidance on its requirements for a protective order, but for further guidance on what this Court considers the proper scope of the protective order the parties may reference *U.S. ex rel Castillo v. Ancilla Systems, Inc.*, 2005 WL 3741548 (S.D. Ill. 2005) and *Lahrichi v. Lumera Corp.*, 2005 WL 2898145 (W.D. Wash. 2005).

For the reasons stated in this opinion, the subpoena issued to Jeff Moor, Defendants' non-testifying expert, hereby is quashed. The motion to quash the subpoena issued to Catherine Sreckovich, Defendants' testifying expert, is denied. Finally, the parties shall execute an agreed HIPAA qualified protective order consistent with this opinion and submit it to this Court for final approval in no more than 14 days. Upon notice of entry of the protective order, Navigant or its employee, Catherine Sreckovich, shall produce the disputed documents within 14 days after the lifting of any discovery stay entered in the underlying litigation.

So ordered.

_____
Virginia M. Kendall
United States District Judge
Northern District of Illinois

Date: March 7, 2006